IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID C. NICHOLSON                                                                          PLAINTIFF

v.                                        No. 2:17-CV-02098

STANDARD INSURANCE COMPANY, et al.                            DEFENDANTS

**OPINION AND ORDER**

Plaintiff David C. Nicholson brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., alleging Defendants Standard Insurance Company, et al. ("Standard") wrongly denied his claim for disability benefits. Before the Court are the administrative record (Doc. 19), Nicholson's brief (Doc. 20) and reply (Doc. 27), and Standard's brief (Doc. 24). For the reasons stated herein, the Court finds that Standard's decision to deny benefits is AFFIRMED, Nicholson's claim is DENIED, and this case is DISMISSED WITH PREJUDICE.

**I.**      **Background**

Nicholson was a participant in a long-term disability plan ("Plan") issued and administered by Standard. The Plan provides that "[i]f you become Disabled while insured under the Group Policy, we will pay [long term disability] Benefits according to the terms of the Group Policy after we receive Proof Of Loss satisfactory to us." The Plan granted discretion to Standard to interpret the Plan and to resolve all questions arising in the administration, interpretation and application of the Plan including determining who is entitled to benefits.

Nicholson stopped working on September 28, 2014 and submitted a claim for benefits, asserting that he was unable to work due to back pain.

Nicholson's employer, Cudd Energy Services, sent his job description to Standard and identified his occupation as "CPS Field Salesman" and "CPS District Salesman." Standard had a vocational expert, Paul Kangas, review the employer's job description and Nicholson's own description of his job. Kangas determined that Nicholson had an occupation in "the Light strength range."

Dr. Gary Nudell, a board certified internist, reviewed Nicholson's medical records. Dr. Nudell noted that Nicholson's treating physician, Dr. Suh Niba, stated that Nicholson was unable to work. However, Dr. Nudell noted that there were limited clinical findings related to Nicholson's self-reported complaints of pain and that he was not referred for specialty care. Based on his review of the medical records, Dr. Nudell concluded that Nicholson "could perform light level activity on a full time basis with reasonable continuity."

In reliance upon this information, Standard denied Nicholson's claim. After the denial, Nicholson's employer sent a letter that modified his job description and Dr. Niba sent correspondence providing further support for his claim.

Standard asked the vocational expert to reexamine Nicholson's occupation in light of his employer's letter. After reviewing the letter, Kangas revised his opinion and determined that Nicholson's occupation "would have involved physical demands within the Medium demand classification."

Standard asked Dr. Nudell to reconsider his prior opinion in light of the additional correspondence from Dr. Niba. Dr. Nudell wrote an addendum to his original report and stated that Dr. Niba's correspondence did not cause him to change his opinion. Dr. Nudell noted that the medical records did not support a conclusion that Nicholson could not perform all of the activities associated with a medium level occupation. However, he suggested that if there were questions

regarding Nicholson's ability to lift, sit, and stand as a result of disc disease, Standard should have an orthopedist review the records.

Dr. Kenneth J. Kopacz, a board certified orthopedic surgeon, reviewed Nicholson's records and determined that "[b]ased upon the medical documentation, there is no clinical support for functional impairment." Dr. Kopacz further concluded that Nicholson should be able to perform all of the activities associated with a medium level occupation.

Standard advised Nicholson that it had considered his supplemental materials and had consulted two physicians, including a qualified orthopedist, but still had concluded that Nicholson had not presented evidence substantiating his disability. Standard advised Nicholson that he could file an administrative appeal.

Nicholson filed an appeal. As part of Nicholson's appeal, his lawyer provided medical records. Standard alleges that it had already obtained most of these records.

Dr. Mark Shih, who is certified in physical medicine and rehabilitation, reviewed Nicholson's records on appeal. Dr. Shih noted "[v]isit notes with Dr. Niba document only [Nicholson's] subjective complaints of increased difficulty without abnormality on exam, nor imaging changes, without support for limitations and restrictions." Shih further noted that he "would typically expect there would be a change in [Nicholson's] pain medication regimen, referral to a specialty provider, and further evaluation of [Nicholson's] condition," none of which occurred.

Standard advised Nicholson that it was upholding its denial of his claim and he subsequently filed this lawsuit.

## II. Legal Standard

Generally, once a plaintiff has exhausted his administrative remedies, the court's function

is to conduct a review of the record that was before the administrator of the plan when the claim was denied. *Farfalla v. Mutual of Omaha Ins. Co.*, 324 F.3d 971, 974-75 (8th Cir. 2003). A denial-of-benefits claim under ERISA is reviewed for an abuse of discretion when, as is the case here[1], "a plan gives the administrator discretionary power to construe uncertain terms or to make eligibility determinations." *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 1997) (en banc). When a plan confers discretionary authority, then the Court must defer to the determination made by the administrator unless such determination is arbitrary and capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[R]eview for an 'abuse of discretion' or for being 'arbitrary and capricious' is a distinction without a difference" because the terms are generally interchangeable. *Jackson v. Prudential Ins. Co. of Am.*, 530 F.3d 696, 701 n.6 (8th Cir. 2008).

The law is clear that the decision of a plan administrator may only be overturned if it is not "reasonable; i.e. supported by substantial evidence." *Cash v. Wal-Mart Group Health Plan*, 107 F.3d 637, 641 (8th Cir. 1997). An administrator's decision will be deemed reasonable if "a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Id.* If a decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made. *Id.*

The Court's task now is to analyze whether Standard's decision to deny benefits to

---

[1] Nicholson disputes that abuse of discretion is the proper standard of review, and instead advocates for de novo review based on Ark. Admin. Code 054.00.101-4 ("Rule 101"). Rule 101 applies to "all disability income policies . . . which are issued or renewed on and after March 1, 2013." Ark. Admin. Code 054.00.101-7. The Policy in this case was issued on January 1, 2007 and last amended on January 1, 2013. While Nicholson argues that "[b]ased on the Plan's own language the policy must have renewed" after March 1, 2013, he offers no support for this contention. Accordingly, the Court finds that Rule 101 does not apply to the Policy.

Nicholson was an abuse of discretion. In considering this question, the Court must examine the basis behind the denial and determine if the decision was supported by substantial evidence. *See id.* There are five factors the Court will consider to determine whether Standard's decision was reasonable:

> (1) whether the administrator's interpretation is consistent with the goals of the Plan;
> (2) whether the interpretation renders any language in the plan meaningless or internally inconsistent;
> (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute;
> (4) whether the administrator has interpreted the relevant terms consistently; and
> (5) whether the interpretation is contrary to the clear language of the Plan.

*Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 643 (8th Cir. 2002).

### III. Analysis

As an initial matter, the Court finds that Standard's review of Nicholson's medical records was reasonable. The record reflects that Nicholson's treating physician, Dr. Niba, reported Nicholson's complaints of back pain. However, Dr. Niba offered no objective evidence that Nicholson's pain would render him unable to perform his job. Three additional physicians subsequently reviewed Nicholson's medical records. These physicians noted that there was no objective evidence of disability such as imaging or evaluation by a specialist. The Eighth Circuit has held that when a doctor's opinion provides no reliable objective evidence to support a finding, "[i]t is not unreasonable for a plan administrator to deny benefits based upon a lack of objective evidence." *McGee v. Reliance Standard Life Ins. Co.*, 360 F.3d 921, 924-25 (8th Cir. 2004). Accordingly, Standard's decision to ignore the opinion of Dr. Niba in favor of crediting the opinions of other physicians was reasonable and not an abuse of discretion. *See Delta Family-Care Disability & Survivorship Plan v. Marshall*, 258 F.3d 834, 843 (8th Cir. 2001) ("Where the

5

record reflects conflicting medical opinions, the plan administrator does not abuse its discretion in finding the employee not to be disabled.").

The first and second *Shelton* factors weigh in favor of Standard. The Plan's goal, as stated in the "Insuring Clause," is to provide benefits to individuals who become disabled while insured under the Plan. The Plan notes that Standard will pay benefits after receiving proof of loss which it deems to be satisfactory. The Plan defines a disabled individual as one who is "unable to perform with reasonable continuity the Material Duties of [his] Own Occupation." Since Nicholson's medical records do not provide objective evidence that his complaint of back pain prevented him from performing the material duties of his occupation, Standard's decision to deny Nicholson benefits was a proper interpretation of the Plan, was not contrary to the goals of the Plan, and was not inconsistent with the Plan's definition of disability or any other language in the plan.

The remaining three *Shelton* factors also weigh in favor of Standard. In considering these factors, the Court finds that Standard acted carefully, reasonably, and appropriately in evaluating Nicholson's claim in light of the Plan's terms. Nicholson was afforded a full and fair review of both the denial of his claim and the appeal of that denial. Standard relied on the opinions of multiple physicians in denying the claim. Standard ultimately found Nicholson not to be disabled due to a lack of correlation between his back pain and his ability to perform the material duties of his job. Accordingly, Standard's decision to deny benefits was made after careful review, while comporting with ERISA and the clear language of the Plan.

Accordingly, the Court finds that Standard did not abuse its discretion in denying Nicholson's claim.

## IV. Conclusion

IT IS THEREFORE ORDERED that Standard's decision to deny benefits is AFFIRMED,

Nicholson's claim is DENIED, and this case is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED this 19th day of March, 2018.

/s/ P. K. Holmes, III
P.K. HOLMES, III
CHIEF U.S. DISTRICT JUDGE